IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**THE LAUREL MANAGEMENT** )
**GROUP, LLC** and **DENISE MUELLER**, )
)
Plaintiffs, )
)
v. ) 2:18cv1000
) **Electronic Filing**
**WHITE SHEEP CORPORATION** and )
**HAMISH SUTHERLAND**, )
)
Defendants. )

# **OPINION**

Laurel Management Group, LLC ("Laurel") and Denise Mueller ("Mueller") (collectively "plaintiffs") commenced this contract action against White Sheep Corporation ("White Sheep") and Hamish Sutherland ("Sutherland") (collectively "defendants") seeking redress for the alleged failure to follow through on an arrangement aimed at procuring a license to produce medical marijuana in the state of Pennsylvania. Presently before the court is defendants' motion for partial dismissal. For the reasons set forth below, the motion will be granted.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual

basis to move the claim from the realm of mere possibility to one that shows entitlement by presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are "'merely consistent with' a defendant's liability." Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 556 U.S. at 678 ("'The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"); Phillips v. County

of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element ... [and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Phillips, 515 F.3d at 235; see also Wilkerson v. New Media Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("'The complaint must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.

      The facts averred in the complaint as viewed in the light most favorable to plaintiffs are as follows.  Mueller was a resident of Pennsylvania and the CEO of Laurel, a Pennsylvanian company.  On behalf of Laurel she orally agreed to enter into a business relationship with White Sheep, a Canadian company.[1]  In doing so she interacted with defendant Sutherland, a resident of Canada and the CEO of White Sheep.  Complaint at ¶¶ 1-4, 12, 21.  The general purpose of the business relationship was to apply for a commercial and/or clinical research license to produce medical cannabis in Pennsylvania, and, if awarded the license, to operate jointly a cannabis cultivation facility in Pennsylvania.  Id. at ¶ 12.  As part of the business relationship Laurel was promised 8.33% and Mueller 10% of the initial equity in any resulting company that earned a clinical research license.  Id. at ¶¶ 22, 31.  Mueller was additionally promised a suitable role of employment therein.  Id.

---

[1] The parties' agreement was memorialized in memoranda, letters of co-operation, emails and other documentation.  Complaint at ¶ 21.

3

The business relationship was predicated on the distinct benefits each side could provide to the other. As a commercial operator with expertise in building large-scale, regulation-compliant cannabis cultivation facilities (e.g., facilities that cultivate, process, extract, package and distribute cannabis for medical and adult use) as well as a strategic investor with cannabis assets in the United States and Canada, White Sheep possessed financial capital, human resources and operational expertise. Id. at ¶ 13. Laurel brought to the table its local knowledge and a significant network of stakeholders that it previously built as a first-round applicant for a commercial cannabis license.[2] Id. at ¶¶ 14-15.

The parties' respective areas of expertise and anticipated contributions identified what was expected of them as part of their business relationship. White Sheep was to provide information and responses relating to the technical and operational aspects of the application. It also was to provide funding for (1) the proposed facility property, (2) the application itself (i.e., the fees and costs relating to its construction), and (3) the build-out and operation of the proposed facility, as well as the needed personnel and expertise. Id. at ¶ 16. Laurel was to lead the overall application process, provide information and responses relating to the diversity and social impact aspects of the application, identify and propose suitable properties for the facility and provide local, in-state support for the build-out and operation. Id. at ¶ 17.

As a result of their reliance on and investment in this business relationship, plaintiffs were unable to enter into any similar business relationships with other parties seeking to apply for a license and/or to operate a commercial/clinical cannabis cultivation facility. Id. at ¶¶ 18, 22, 31.

---

[2] In that application, Laurel developed the highest scoring community impact plan. Id. at ¶ 15.

As part of the business relationship, Mueller successfully completed the Pennsylvania Department of General Service's (DGS) process for obtaining self-certification as a small, minority-owned procurement services business under the DGS's Small Business Contracting Program. Id. at ¶ 39. This certification was based on her gender. White Sheep contracted with plaintiff in order to receive diversity points and preferential treatment in the application process. Id. at ¶ 37. During the application process defendant learned that it would receive more diversity points by working with other minority contractors and therefore terminated the business relationship. Id. at ¶ 38.[3]

Plaintiffs advance causes of action for alleged breach of contract, unjust enrichment, promissory estoppel, and discrimination in violation of 42 U.S.C. § 1981. The § 1981 discrimination claim is predicated on plaintiff's gender. They seek compensatory and punitive damages, costs and attorney fees.

Defendants move to dismiss Sutherland and the § 1981 discrimination claim. First, they contend that plaintiffs' discrimination claim fails as a matter of law because gender discrimination is not cognizable under § 1981. Second, the complaint purportedly fails to advance facts that indicate Sutherland personally is liable for the actions of White Sheep. In the alternative, defendant asserts that there was insufficient service of process as to Sutherland.

Plaintiffs contend that claims of national origin discrimination are cognizable under § 1981 and that national origin is intertwined with plaintiff's § 1981 claims. In addition, the complaint supposedly states a claim against defendant Sutherland because he was involved personally and was acting on behalf of both himself and White Sheep. Finally, plaintiffs

---

[3] Although not explicitly stated in the complaint, it stands to reason that these other contractors possessed a minority status other than, or in addition to, gender.

maintain that Sutherland waived any challenge to personal jurisdiction by entering his appearance.

Plaintiffs' § 1981 claim fails as a matter of law because the statute does not encompass gender discrimination. Section 1981 provides in pertinent part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As the Supreme Court has observed, § 1981 was designed specifically to protect against *racial* discrimination. See, e.g., Georgia v. Rachel, 384 U.S. 780 (1966) (noting that the phrase "as is enjoyed by white citizens" and the statute's legislative history "clearly indicate[] that Congress intended to protect a limited category of rights, specifically defined in terms of *racial* equality" and that such statutory language was added "to emphasize the *racial* character of the rights being protected") (emphasis added).

Moreover, based on the plain language of § 1981, the Court generally has limited it to claims of racial discrimination and has declined to extend it to other categories such as gender discrimination. In Runyon v. McCrary, 427 U.S. 160 (1976), the Court held that while it is "well established that [§ 1981] prohibits racial discrimination" in the making and enforcement of private contracts, it is "in no way addressed to" gender discrimination. Runyon, 427 U.S. at 167-68. Consequently, plaintiffs' effort to raise a § 1981 claim based on gender discrimination is without merit and any such claim must be dismissed.

Plaintiffs' efforts to advance a § 1981 claim based on national origin discrimination likewise are unavailing. As previously observed, the Court generally has limited § 1981 to claims of racial discrimination and has declined to extend it to other categories of discrimination. This includes national origin. See Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968) (stating that the parallel statutory language 'as is enjoyed by white citizens' in 42 U.S.C. § 1982 "deals

6

only with racial discrimination and does not address itself to discrimination on grounds of … national origin") (emphasis added). Thus, national origin discrimination claims under § 1981 may not be based "solely on the place or nation of [the person's] origin," but rather must meaningfully be founded on or linked to race or ethnicity. See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid… .").

Here, there are no averments in the complaint that raise the specter of racial or ethnic discrimination. Although plaintiffs assert that their claim of national origin discrimination is "intertwined" with their claim of gender discrimination, no averments advancing the former can be found in plaintiffs' complaint. Because no factual allegations raising national origin discrimination have been pled, the complaint fails to raise such a claim and defendants' motion must be granted on this score as well.

Plaintiffs' efforts to maintain a claim of personal liability against defendant Sutherland also suffer from numerous shortcomings. Although it is less than clear, it appears that plaintiffs rely on a participation theory in seeking to advance a claim of personal liability against defendant Sutherland.[4] For example, plaintiffs title the relevant section of their response as "Defendant Sutherland must not be dismissed because the allegations include his personal involvement." And in that section plaintiffs' reference "the personal involvement of Defendant

---

[4] Under a "participation theory," a corporate officer's liability is premised on his or her personal involvement in actionable conduct.

Sutherland acting on behalf of [White Sheep]" and conclude that "Defendant Sutherland must not be dismissed based on his personal involvement in the alleged wrongdoings." (Dkt. No. 29).

It is well-settled that a corporate officer contracting on behalf of a corporation generally may not be held personally liable for contract damages "[u]nless the corporate officer extends promises in his individual capacity." Walsh v. Alarm Sec. Grp., Inc., 95 F. App'x 399, 402 (3d Cir. 2004) (internal citations omitted). It follows that in order to state a contract-based claim against Sutherland – i.e., one for breach of contract, unjust enrichment, or promissory estoppel – the complaint must allege facts that make a plausible showing that Sutherland made promises to plaintiffs in his individual capacity rather than as a corporate officer of White Sheep.

The complaint, however, is devoid of any allegations that Sutherland was acting in his individual capacity. Though it is alleged that defendant Sutherland was "the President and Chief Executive Officer of White Sheep," the Pennsylvania Superior Court has held that even a corporation's principal officer is not personally liable for contract damages unless he acts "not in his capacity as an officer but personally in his individual capacity." Loeffler v. McShane, 539 A.2d 876, 878-80 (Pa. Super. Ct. 1988). Thus, these references to Sutherland's status as a corporate officer fall short.

Moreover, in an effort to meet the needed threshold, plaintiffs highlight that: (1) Mueller and Sutherland "met with each other and had interactions" including their oral agreement to enter into the business relationship; (2) Sutherland "made efforts" and provided assistance in furtherance of the business relationship; and (3) the business relationship/joint venture failed as a result of Sutherland's actions. (Dkt. No. 29). But these attempts to identify instances where Sutherland was acting in an individual capacity are unavailing, as they only identify instances consistent with Sutherland acting solely as a corporate officer of White Sheep. As a result, plaintiffs have merely "alleged" rather than made a plausible showing that Sutherland was acting

8

in a personal capacity. Iqbal, 556 U.S. at 679. Accordingly, the complaint fails to state a claim for personal liability against defendant Sutherland.

Second, there is no factual basis to suggest that as an individual Sutherland initiated the "minimum contacts" with this forum sufficient to establish personal jurisdiction over him. See International Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945). The sum and substance of Sutherland's alleged conduct essentially is that he interacted with plaintiffs on behalf of White Sheep. The complaint does not allege any facts relating to his contacts with Pennsylvania in an individual capacity. Consequently, the complaint fails to support a basis for this court's personal jurisdiction over Sutherland.

Third, plaintiffs' service of process on Sutherland was not sufficient to establish personal jurisdiction. Pursuant to Rule 12(b)(5), a defendant may seek dismissal for a plaintiff's failure to serve the defendant with sufficient process. Fed. R. Civ. P. 12(b)(5). A Rule 12(b)(5) motion is "the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1353 (3d ed. 2010). In this context, "[t]he great weight of the case law is to the effect that the party on whose behalf service has been made has the burden of establishing its validity."[5] Id. Consequently, plaintiffs bear the burden of proving valid service of process, particularly where, as here, defendants have raised a Rule 12(b)(5) motion for ineffective service.

---

[5] See, e.g., Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010); Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010) ("On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."); In re Katrina Canal Breaches Litigation, 309 F. App'x 833, 835 (5th Cir. 2009), cert. denied, 558 U.S. 1079 (2009); Holly v. Metropolitan Transit Authority, 213 F. App'x 343, 344 (5th Cir. 2007); Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, 51 F.3d 1383, 1387 (8th Cir. 1995); Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 (1st Cir. 1986); Familia De Boom v. Arosa Mercantil, 629 F.2d 1134, 1139 (5th Cir. 1980), cert. denied 451 U.S. 1008.

Defendants specifically maintain that Sutherland was not properly served in accordance with the requirements in Rule 4(f) for service of an individual in a foreign country. They allege that the summons that was purported to be for defendant Sutherland was unsigned, undated, and did not mention defendant Sutherland. As a result, it assertedly failed to comply with the procedures for service of process on Canadian citizens as prescribed by the Hague Convention and Canadian law.

Plaintiffs' response to defendants' objection did not straightforwardly address the issue of service itself. Instead, plaintiffs asserted an alternative basis: that any defect in the service has been waived by Sutherland's counsel's alleged entry of a "general" appearance. But Federal Rule of Civil Procedure 12 long ago abolished the distinction between general and special appearances. See, e.g., In re Hijazi, 589 F.3d 401, 413 (7th Cir. 2009); SEC v.Wencke, 783 F.2d 829, 833 n. 3 (9th Cir. 1986); Hous. Auth. of the City of Atlanta v. Millwood, 472 F.2d 268, 272 (5th Cir. 1973); Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir.1972); Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir. 1944). And thus as long as a defendant has raised the applicable defense in the first responsive pleading, the defense has not been waived. See, Fed. R. Civ. P. 12(g)(2), 12(h).

A review of the record here shows that defendants' initial attorney filed an entry of appearance on December 21, 2018, and a brief in opposition to plaintiffs' motion for default judgment on December 26, 2018. Defendants' subsequent attorneys filed motions to appear *pro hac vice* on January 10, 2019. In its January 11, 2019, order denying plaintiffs' motion for default judgment, this court ordered defendants to file a responsive pleading to the complaint. This in turn permitted defendants to file their first response to the complaint. Defendants did so by advancing the instant motion to dismiss. This sequence complied with the rules and, as a result, defendants did not waive their Rule 12(b) defenses. Since defendants' objection to the

sufficiency of service has not been waived or otherwise effectively rebutted by plaintiffs, defendants' challenge pursuant to Rule 12(b)(5) stands, and the record shows that service of process as to defendant Sutherland was defective.

In short, the complaint fails to (1) state a claim against defendant Sutherland in his individual capacity, (2) support this court's personal jurisdiction over him, and (3) show that he was served with sufficient process. It follows that all claims against defendant Sutherland in his individual capacity must be dismissed.

For the reasons set forth above, defendants' motion for partial dismissal will be granted. An appropriate order will follow.

<u>Date: September 23, 2019</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc: Trent Echard, Esquire
      Marx M. Elmer, Esquire
      David C. Franceski, Jr., Esquire
      Paula D. Shaffner, Esquire
      Elizabeth Kuschel, Esquire
      Benjamin E. Gordon, Esquire

      (*Via CM/ECF Electronic Mail*)