IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE LAUREL MANAGEMENT GROUP, LLC** and **DENISE MUELLER**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:18cv1000 |
| | ) | **Electronic Filing** |
| **WHITE SHEEP CORPORATION** and **HAMISH SUTHERLAND**, | ) ) ) | |
| Defendants. | ) ) | |

## OPINION

Laurel Management Group, LLC ("Laurel") and Denise Mueller ("Mueller")
(collectively "plaintiffs") commenced this contract action against White Sheep Corporation
("White Sheep") and Hamish Sutherland ("Sutherland") (collectively "defendants") seeking
redress for the alleged failure to follow through on an arrangement aimed at procuring a license
to produce medical marijuana in the state of Pennsylvania.  Presently before the court is
defendant White Sheep's motion to set aside the default judgment entered against it on March
12, 2020.  For the reasons set forth below, the motion will be denied.

The facts averred in plaintiffs' complaint provide the backdrop below.  Mueller was a
resident of Pennsylvania and the CEO of Laurel, a Pennsylvanian company.  On behalf of Laurel
she orally agreed to enter into a business relationship with White Sheep, a Canadian company.[1]
In doing so she interacted with defendant Sutherland, a resident of Canada and the CEO of White
Sheep.  Complaint at ¶¶ 1-4, 12, 21.  The general purpose of the business relationship was to
apply for a commercial and/or clinical research license to produce medical cannabis in

---

[1]  The parties' agreement was memorialized in memoranda, letters of co-operation, emails and
other documentation.  Complaint at ¶ 21.

Pennsylvania, and, if awarded the license, to operate jointly a cannabis cultivation facility in Pennsylvania.  Id. at ¶ 12.  As part of the business relationship Laurel was promised 8.33% and Mueller 10% of the initial equity in any resulting company that earned a clinical research license. Id. at ¶¶ 22, 31.  Mueller was additionally promised a suitable role of employment therein.  Id.

The business relationship was predicated on the distinct benefits each side could provide to the other.  As a commercial operator with expertise in building large-scale, regulation-compliant cannabis cultivation facilities (e.g., facilities that cultivate, process, extract, package and distribute cannabis for medical and adult use) as well as a strategic investor with cannabis assets in the United States and Canada, White Sheep possessed financial capital, human resources and operational expertise.  Id. at ¶ 13.  Laurel brought to the table its local knowledge and a significant network of stakeholders that it previously built as a first-round applicant for a commercial cannabis license.[2]  Id. at ¶¶ 14-15.

The parties' respective areas of expertise and anticipated contributions identified what was expected of them as part of their business relationship.  White Sheep was to provide information and responses relating to the technical and operational aspects of the application.  It also was to provide funding for (1) the proposed facility property, (2) the application itself (i.e., the fees and costs relating to its construction), and (3) the build-out and operation of the proposed facility, as well as the needed personnel and expertise.  Id. at ¶ 16.  Laurel was to lead the overall application process, provide information and responses relating to the diversity and social impact aspects of the application, identify and propose suitable properties for the facility and provide local, in-state support for the build-out and operation.  Id. at ¶ 17.

---

[2]  In that application, Laurel developed the highest scoring community impact plan.  Id. at ¶ 15.

As a result of their reliance on and investment in this business relationship, plaintiffs were unable to enter into any similar business relationships with other parties seeking to apply for a license and/or to operate a commercial/clinical cannabis cultivation facility.  Id. at ¶¶ 18, 22, 31.

As part of the business relationship, Mueller successfully completed the Pennsylvania Department of General Service's (DGS) process for obtaining self-certification as a small, minority-owned procurement services business under the DGS's Small Business Contracting Program.  Id. at ¶ 39.  This certification was based on her gender.  White Sheep contracted with plaintiff in order to receive diversity points and preferential treatment in the application process.  Id. at ¶ 37.  During the application process defendant learned that it would receive more diversity points by working with other minority contractors and therefore terminated the business relationship.  Id. at ¶ 38.[3]

Plaintiffs advanced causes of action for alleged breach of contract, unjust enrichment, promissory estoppel, and discrimination in violation of 42 U.S.C. § 1981.  The § 1981 discrimination claim was predicated on plaintiff's gender.  They sought compensatory and punitive damages, costs and attorney fees.

Defendants moved to dismiss Sutherland and the § 1981 discrimination claim.  White Sheep filed an answer to Counts One through Three of the Complaint and asserted counterclaims against plaintiffs.  See Answer and Counterclaims of White Sheep (Doc. No. 19).  A case management conference was held on February 12, 2019.  A case management order was entered and the parties were referred to mediation pursuant to this court's Alternative Dispute Resolution

---

[3]  Although not explicitly stated in the complaint, it stands to reason that these other contractors possessed a minority status other than, or in addition to, gender.

Program.  See Doc. No.s 26 & 27.  The parties commenced with discovery and participated in a

mediation session, which was unsuccessful.

On September 23, 2019, an opinion was issued resolving defendants' motion to dismiss.

See Opinion of September 23, 2019 (Doc. No. 59).  Consistent therewith, an order was entered

dismissing plaintiffs' § 1983 claim with prejudice and dismissing the claims against Hamish

Sutherland in his individual capacity without prejudice.  See Order of September 23, 2019 (Doc.

No. 60).

The parties continued with discovery.  See, e.g., White Sheep's motion to compel (Doc.

No. 33) and Order of April 17, 2019 (Doc. No. 34).  Several issues arose in the process.  See

White Sheep's Motion to Extend Discovery (Doc. 41).  Those issues were resolved and

counsel/the parties continued with discovery.  See, e.g., Order of September 23, 2019 (Doc. No.

61).

On October 29, 2019, White Sheep's counsel filed a motion to withdraw appearance due

to the failure to receive payment for legal services rendered.  See Motion to Withdraw (Doc. No.

66).  Defense counsel advised that despite repeated requests and conversations with White Sheep

and Sutherland, and reassurances of payment from the same, White Sheep and Sutherland had

failed to pay "substantial sums dating back many months . . . ."  Brief in Support (Doc. No. 67)

at 2.  Defense counsel highlighted the heavy burden it/they would be required to shoulder if the

court were to impose ongoing representation without corresponding payment.  Id. at 4.

Defense counsel's motion to withdraw was granted on January 13, 2020.  See Order of

January 13, 2020 (Doc. No. 71).  Neither White Sheep nor Sutherland took any action to rectify

the circumstances giving rise to the motion during the 76 days between October 29, 2019, and

January 13, 2020.

4

In conjunction with granting defense counsel's motion to withdraw, the court directed defense counsel to serve a copy of the order on White Sheep and Sutherland and file a certificate reflecting the accomplishment of the same.  It also stayed the action for 45 days to permit White Sheep and/or Sutherland to obtain new counsel for White Sheep.  See Order of January 13, 2020. Defense counsel served a copy of the order on White Sheep and Sutherland.  See Certificate of Service (Doc. No. 72).

On March 2, 2020, plaintiffs moved for default judgment based on the failure of White Sheep to comply with the court's order to obtain new counsel.  Motion for Default (Doc. No. 72).  Plaintiffs aptly noted that White Sheep could neither prosecute nor defend the counterclaims/action without counsel and a balancing of the factors set forth in Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984), supported the requested relief.  Id. at 3-6.  Plaintiffs filed a certificate reflecting service of the motion on White Sheep and Sutherland.  Certificate of Service (Doc. No. 74).  On March 12, 2020, the court agreed with plaintiffs and granted the motion for default.  Order of March 12, 2020 (Doc. No. 75).  It set a hearing on damages for May 13, 2020.  Id.  That hearing was rescheduled for May 27, 2020.  On May 26, 2020, plaintiffs filed a brief in support of their damages as well as proposed findings of fact and conclusion of law to aid the court in adjudicating the damages.  See Plaintiffs' Brief in Support of Default Judgment (Doc. No. 82) and Proposed Findings of Fact and Conclusions of law (Doc. No. 83).  The damages hearing was thereafter continued until further order of court.

On July 13, 2020, current defense counsel Ryan Mick and John Newborg entered their appearance on behalf of White Sheep.  See Doc. No.s 85 & 86.  On July 20, 2020, they filed a motion to set aside the default judgment against White Sheep.  Motion to Set Aside Default Judgment (Doc. No. 87).  In support, White Sheep relies on Rule 60(b) and argues that relief should be granted pursuant to the Rule 60(b)(5) because "applying it prospectively is no longer

5

equitable." It explains that it has been incentivized to obtain counsel, has done so and therefore it is no longer equitable to have a judgment against defendant "for not having counsel." Brief in Support (Doc. No. 88) at 2-3. It further relies on the residual clause in Rule 60(b)(6), contending that caselaw supports the granting of motions to set aside default, as does the liberal standards governing Rule 60(b) and the premise that cases should be adjudicated on the merits whenever possible. Id. at 3.

Plaintiffs maintain that White Sheep has failed to identify any inequitable factor or scenario to support its reliance on Rule 60(b)(5). Nor has it identified the "existence of extraordinary circumstances" that supposedly would justify the reopening of judgment under Rule 60(b)(6). Plaintiffs' Brief in Opposition (Doc. No. 90) at 8-9. To the contrary, plaintiffs note that they were required to continue pursuing their claims and investing resources while White Sheep failed to participate in the litigation for at least nine months. Id. at 8. They note the entry of appearance by current counsel for White Sheep was

- 258 days after prior counsel filed a Motion to Withdraw (Doc. Nos. 65, 66),

- 182 days after this Court ordered them to secure new counsel (Doc. Nos. 71, 75),

- 123 days after this Court entered default (Doc. Nos. 85, 86), and

- 48 days after Plaintiffs filed their brief on damages and proposed findings of fact (Doc. Nos. 82, 83).

And White Sheep purportedly has failed to identify any reason for the substantial delay. Thus, from plaintiffs' perspective, White Sheep has failed to identify circumstances that warrant displacing the finality that attached to the granting of its motion for default judgment.

Rule 60(b) governs motions to reopen, and "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." Gonzalez v. Crosby, 545 U.S. 524, 528-29

(2005); Jackson v. Danberg, 656 F.3d 157, 162 (3d Cir. 2011).  In general, "relief under Rule

60(b) is available only under such circumstances that the 'overriding interest in the finality and

repose of judgments may properly be overcome.'"  Harris v. Martin, 834 F.2d 361, 364 (3d Cir.

1987)  (quoting Martinez–McBean v. Government of the Virgin Islands, 562 F.2d 908, 913 (3d

Cir. 1977) and Mayberry v. Maroney, 558 F.2d 1159, 1164 (3d Cir. 1977)).

      Although the United States Court of Appeals for the Third Circuit "has adopted a policy

disfavoring default judgments and encouraging decisions on the merits, . . . the decision to vacate

a default judgment is left to the sound discretion of the trial court."  Harad v. Aetna Cas. & Sur.

Co., 839 F.2d 979, 982 (3d Cir. 1988) (citation omitted); accord United States v. $55,518.05 in

U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984) ("We recognize . . . that this court does not

favor entry of defaults or default judgments.").  A settled tenant of this policy is that "doubtful

cases [are] to be resolved in favor of the party moving to set aside the default judgment so that

cases may be decided on their merits."  United States v. $55,518.05 in U.S. Currency, 728 F.2d

at 194-95 (collecting cases).

      White Sheep relies on exclusively on subsections (b)(5) and (b)(6).  White Sheep's Brief

in Support (Doc. No. 88) at 2.  Rule 60(b) provides in pertinent part:

> (b) **Grounds for Relief from a Final Judgment, Order, or Proceeding**.
>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> * * *
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. Pro. 60(b).

White Sheep has failed to identify a sound basis for the relief it seeks.  Its position that the provision applicable to prospective relief applies to the matter at hand is misplaced.  As to the first two clauses in subsection (b)(5), White Sheep does not rely on a showing that the prior judgment has been satisfied, released or discharged.  Nor does it advance a showing that the judgment is based on an earlier judgment that has been reversed or modified.  See, e.g., Harris, 834 F.2d at 365-66 (a final judgment is not subject to modification merely because it was based on an erroneous interpretation of the controlling precedent).  Thus, these clauses of (b)(5) are not applicable.

Moreover, the "prospective application" clause of  Rule 60(b)(5) likewise does not provide White Sheep with an avenue for relief.   "That clause incorporates the time-honored rule that a 'court of equity (may) modify an injunction in adaptation to changed conditions.'" Marshall v. Board of Education, Bergenfield, N.J., 575 F.2d 417, 425 (3d Cir. 1978).  This limitation is significant, because it only applies to the prospective or executory application of a court's equitable degree.  Id.  It does not apply to judgments at law for money damages.  Id. ("By contrast, a judgment at law for damages for past wrongs is 'inherently final' . . . .") (citing American Iron & Steel Institute v. EPA, 560 F.2d 589, 599 (3d Cir. 1977), cert. denied, 435 U.S. 914 (1978)).

Here, White Sheep accurately notes that the granting of plaintiffs' motion for default judgment was White Sheep's failure to retain counsel after direct notice that it was required to do so.  And the court did bifurcate the entry of an order granting plaintiffs' motion and its actual entry of a monetary award.  But it did so in order to proceed with an adjudication of plaintiffs' claimed damages in a manner that assured adequate time for reflection and a careful and thoughtful resolution of the same.  Affording such protections to the adjudicatory process does

not convert the nature of the proceeding into a form of injunctive relief.  Thus, Rule 60(b)(5)

does not supply an avenue for relief from the judgment in question.

      White Sheep's attempt to garner relief pursuant to Rule 60(b)(6) likewise is wide of the

mark.  Rule 60(b)(6) does provide that a court may grant relief from a final judgment for "any

other reason that justifies relief."  Nevertheless, a party seeking relief under Rule 60(b)(6) must

demonstrate the existence of "extraordinary circumstances" that demonstrate justification for

reopening the judgment.  Budget Blinds, 536 F.3d at 255 (collecting cases).  "This requirement

exists in order to balance the broad language of  Rule 60(b)(6), which allows courts to set aside

judgments for "any" reason justifying relief, with the interest in the finality of judgments."  Id.

(citing In re Fine Paper Antitrust Litig., 840 F.2d 188, 194-95 (3d Cir 1988) and Mayberry v.

Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).

      Establishing a showing of extraordinary circumstances requires a demonstration that

without relief from the judgment, "an 'extreme' and 'unexpected' hardship will result."  Id.

(quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).  The absence of neglect by

a party and egregious, unauthorized dereliction of duty by counsel may amount to extraordinary

circumstances.  See Boughner v. Sec. of Health, Ed. and Welfare, U.S., 572 F.2d 976, 977 (3d

Cir. 1978) (The failure of counsel for multiple claimants seeking relief under the Federal Coal

Mine Health and Safety Act of 1969 to respond to the Secretary's motions for summary

judgment, which amounted to nothing short of the abandonment of his clients, satisfied the

extreme and unexpected hardship requirement where the abandonment precluded an adjudication

of the merits of the statutory claims for remedial benefits.).

      It is well-settled, however, that "extraordinary circumstances rarely exist when a party

seeks relief from a judgment that resulted from the party's deliberate choices."  Budget Blinds,

536 F.3d at 255 (citing Coltec Indus. v. Hobgood, 280 F.3d 262, 273 (3d Cir. 2002) ("[C]ourts

have not looked favorably on the entreaties of parties trying to escape the consequences of their own 'counseled and knowledgeable' decisions.") and <u>Ackermann v. United States</u>, 340 U.S. 193, 198-99 (1950) (petitioner could not show the existence of extraordinary circumstances when he voluntarily chose not to appeal due to the modest expenses that an appeal would require)).  And a deliberate choice to permit a legal course of action to advance, whether by action or inaction, falls short of creating an "unexpected hardship."  <u>Id.</u> at 258 ("The Defendants acknowledge that their decision not to contest the California judgment was the result of a deliberate choice.  Thus, the default judgment cannot be said to have created an 'unexpected hardship.'").

Here, White Sheep had the advice of counsel when it was informed of the impending motion to withdraw appearance due to the failure to pay for the legal services previously rendered.  Stradley Ronon advised White Sheep and its Chief Executive Officer, Sutherland, that substantial sums dating back many months remained past due and White Sheep needed to remedy the situation.  Counsel relayed that the matter had been discussed with White Sheep and Sutherland on several occasions over the past months.  Brief in Support of Motion to Withdraw (Doc. No. 67) at 1-2.  Despite these repeated efforts to salvage the relationship by counsel, "neither White Sheep nor Mr. Sutherland [] responded to Stradley Ronon['s invitation] to discuss their position on Stradley Ronon's requested withdrawal, or White Sheep and Mr. Sutherland's attempts to secure replacement counsel."  <u>Id.</u> at 2.  White Sheep failed to take any action to rectify the situation.

After ongoing inaction by White Sheep, the court entered the order permitting counsel to withdraw.  <u>See</u> Order of January 13, 2020 (Doc. No. 71).  The litigation was stayed for 45 days to permit White Sheep to obtain new counsel.  <u>Id.</u>  White Sheep and Sutherland were served with a copy of the order.  <u>See</u> Certificate of Service (Doc. No. 72).  Plaintiffs filed for default Judgment after the stay expired.  White Sheep and Sutherland were served with a copy of the

motion.  <u>See</u> Certificate of Service (Doc. No. 74).  The court waited an additional twelve days

before granting the motion.  <u>See</u> Order of March 12, 2020.  White Sheep failed to obtain counsel

during this time.

Plaintiffs filed a brief in support of default judgment and proposed findings of fact on

May 26, 2021.  This was the first time plaintiff identified the amount of damages they were

requesting at the upcoming hearing.  <u>See</u> Brief in Support (Doc. 82) and Proposed Findings of

Fact and Conclusions of Law (Doc. 83).

White Sheep has failed to offer any explanation as to why it chose not to 1) rectify the

financial difficulties that arose with its prior counsel or 2) retain new counsel until after a motion

for default judgment had been granted.  With knowledge of the withdraw and the limited

duration of the stay, it chose to let the proceeding advance.  Indeed, it was only after plaintiffs

revealed that they were seeking in excess of $2,000,000.00 that White Sheep took the step of

retaining new counsel.  Given these facts, the record is devoid of any basis to find that the default

judgment and resulting damage amount to be awarded constitute "an unexpected hardship" to

White Sheep.  Consequently, relief pursuant to Rule 60(b)(6) is unavailable.

Although not raised, the court also has considered White Sheep's motion pursuant to the

traditional approach utilized in connection with the entry of default judgment.  This approach

involves the balancing of the following factors: "(1) whether lifting the default would prejudice

the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the

defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative

sanctions."  <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 73 (3d Cir. 1987) (collecting

cases).  This approach essentially is an analysis pursuant to Rule 60(b)(1).  <u>Budget Blinds</u>, 536

F.3d at 257 ("<u>Emcasco</u> was in effect a  Rule 60(b)(1) case [and] most of the cases that <u>Emcasco</u>

cites in support of its four-part test are applications of Rule 60(b)(1).").

A balancing of these factors fails to weigh in White Sheep's favor. First, plaintiffs have diligently pursued their claims and invested substantial resources in advancing the litigation to the brink of obtaining a monetary award. White Sheep has had numerous opportunities to resolve this litigation or otherwise preserve its ability to defend and pursue its counterclaims. Lifting the default would in effect jettison plaintiffs back to square one with no corresponding benefit in advancing toward final resolution. White Sheep would benefit from its decision to let the litigation progress instead of undertaking prompt action to preserve its ability to defend and pursue its counterclaims. Thus, the first factor weighs significantly against the relief White Sheep seeks.

White Sheep has failed to present a showing that it has a *prima facie* meritorious defense. Nevertheless, it will be presumed that it might be able to defeat plaintiffs' claims in whole or in part and/or prevail in whole or in part on its counterclaims. Thus, this factor leans in favor of reopening the judgment against White Sheep.

White Sheep has failed to make a showing that the default judgment is the product of excusable neglect or inadvertence on its part. Indeed, as highlighted above, the record supports the opposite inference: the granting of plaintiffs' motion was an outcome that White Sheep had been made well aware of before it occurred and White Sheep made a deliberate choice to simply let that result occur.[4] Thus, this factor weighs in favor of denying relief.

Finally, White Sheep has failed to advance any other alternative sanction that could be imposed. And it is difficult to envision one that would permit White Sheep to proceed without

---

[4] Of course, this glaring aspect of the record likewise appears to explain why White Sheep did not seek to make a showing that the default judgment was the result of "mistake, inadvertence, surprise, or excusable neglect" as required to invoke Rule 60(b)(1).

sanctioning its chosen course of conduct.  Given this state of affairs, this factor likewise weighs in favor of plaintiffs.

The record fails to support relief from judgment under Rule 60(b) as advocated by White Sheep or under the more traditional approach employed in conjunction with default judgments. For these reasons, White Sheep's motion to lift default judgment will be denied.  An appropriate order will follow.

Date: March 30, 2021

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Trent Echard, Esquire
       John David Newborg, Esquire
       Ryan R. Mick, Esquire


       (*Via CM/ECF Electronic Mail*)

13